LAGESEN, J.
*353 The principal question presented in this appeal is how, if at all, the United States Supreme Court's decision in Indiana v. Edwards , 554 U.S. 164, 178, 128 S.Ct. 2379, 171 L. Ed. 2d 345 (2008), bears on the inquiry an Oregon court may conduct when considering whether to grant a mentally ill criminal defendant's request to exercise the right to self-representation. In Edwards , the Court held that the federal "Constitution permits States to insist upon representation by counsel for those competent enough to stand trial * * * but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." Id . The issue arises in this case because the trial court allowed defendant, *203 who suffers from severe mental illness but was competent both to stand trial and to waive counsel,[1] to represent himself at trial. Defendant was convicted on all 17 charges against him. The trial court sentenced defendant to a total of 348 months' incarceration.
On appeal, defendant asserts that, in allowing him to represent himself, the trial court failed to recognize the discretion that it had under Edwards to deny his request to represent himself at trial if the court found that defendant's mental illness rendered him incompetent to conduct trial proceedings on his own. Defendant contends that the trial court's failure to recognize that it had discretion to insist that defendant proceed to trial with counsel constitutes reversible error. Defendant also raises seven additional assignments of error that are, by and large, unpreserved. Those assignments of error challenge the sufficiency of the evidence supporting his convictions and the trial court's decision to impose consecutive sentences on certain counts.
The state responds that defendant's Edwards assignment of error is unpreserved and is not susceptible to correction as plain error. The state also asserts that Oregon law precludes a trial court from denying a mentally ill criminal defendant's request to proceed without counsel even *354 where the defendant's mental illness renders the defendant unable to conduct the basic tasks of the defense. The state urges us to reject the balance of defendant's assignments of error, primarily on the ground that they are not preserved and the identified errors are either (1) not errors at all; (2) not plain errors, if errors; or (3) not the sort of plain errors that we should exercise our discretion to correct.
We reject all but defendant's Edwards assignment of error without further written discussion. As to that assignment of error, we conclude that it is preserved and that, consistent with Edwards , an Oregon court considering a mentally ill defendant's request to proceed without counsel may take into account whether, as a result of severe mental illness, the defendant lacks the ability "to carry out the basic tasks needed to present [one's] own defense without the help of counsel," and may deny the request if the answer to that question is yes. Edwards , 554 U.S. at 175-76, 178, 128 S.Ct. 2379 (defining what it means to be competent to represent oneself at trial and identifying circumstances in which a court can decline a request to proceed to trial without counsel). Because the trial court here erroneously failed to recognize the existence of that discretion and because that error had some likelihood of affecting the jury's verdict, we reverse and remand.
I. BACKGROUND
A. Legal Framework
Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution each afford a criminal defendant the right of self-representation. State v. Hightower , 361 Or. 412, 393 P.3d 224 (2017) (identifying Article I, section 11, right of self-representation); Faretta v. California , 422 U.S. 806, 95 S.Ct. 2525, 45 L. Ed. 2d 562 (1975) (identifying Sixth Amendment right of self-representation). The right of self-representation is "not absolute and unqualified." Hightower , 361 Or. at 417, 393 P.3d 224. A court may, consonant with Article I, section 11, decline to permit a criminal defendant to proceed without counsel if the defendant's exercise of the right of self-representation conflicts with the trial court's "overriding obligation to ensure the fairness and integrity of the trial and its inherent authority to conduct proceedings in an orderly and expeditious manner." Id . at 417-18, 393 P.3d 224. The *355 Sixth Amendment gives courts a similar range of discretion when addressing a defendant's request to exercise the right of self-representation. Edwards , 554 U.S. at 171, 128 S.Ct. 2379.
The Oregon appellate courts have not considered whether and when concerns related to a criminal defendant's mental illness permit a trial court to deny the defendant's *204 request to proceed without counsel when the defendant is competent to stand trial but may not be competent to act as his or her own lawyer. As noted, the United States Supreme Court has.
In Edwards , the Court considered whether, and under what circumstances, mental illness-related concerns would permit a trial court to deny a criminal defendant's request to proceed without counsel when the defendant was otherwise competent to stand trial and to waive the right to counsel under the competency standard set by Dusky v. United States , 362 U.S. 402, 80 S.Ct. 788, 4 L. Ed. 2d 824 (1960).[2] Edwards , 554 U.S. at 174, 128 S.Ct. 2379. The Court held that a trial court permissibly could "insist upon representation by counsel for those competent enough to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." Id . at 178, 128 S.Ct. 2379.
The Court reasoned that the fact that a mentally ill person is competent to stand trial with the assistance of counsel does not necessarily mean that the same person is competent to conduct the basic tasks of putting on a defense without the assistance of counsel, noting that the legal standards for determining whether a defendant is competent to stand trial are predicated on the assumption that the defendant will be assisted by counsel. Id . at 173, 174-75, 128 S.Ct. 2379. The Court noted that, in Massey v. Moore , 348 U.S. 105, 108, 75 S.Ct. 145, 99 L. Ed. 135 (1954), it previously had observed that "[o]ne might not be insane in the sense of being incapable of *356 standing trial and yet lack the capacity to stand trial without the benefit of counsel." Id . at 173, 128 S.Ct. 2379.
The Court also observed that the nature of mental illness itself counseled in favor of a legal standard that recognizes that a person who is competent to stand trial may not be competent to conduct a defense without the assistance of counsel: "[M]ental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." Id . at 175, 128 S.Ct. 2379. As a result, a person with a mental illness who has the capacity to assist counsel may not, as a result of the mental illness, have the capacity to perform trial tasks through the whole of a trial.
Additionally, the Court concluded that the purpose of the right of self-representation-dignifying personal autonomy-is not served by permitting self-representation "of a defendant who lacks the mental capacity to conduct his defense without the assistance of counsel." Id . at 176, 128 S.Ct. 2379. Rather, under such circumstances, "the spectacle that could well result from * * * self-representation at trial is at least as likely to prove humiliating as ennobling." Id . Further, allowing self-representation in such cases "undercuts the most basic of the Constitution's criminal law objectives, providing a fair trial." Id.
Finally, the Court recognized that "proceedings must not only be fair, they must 'appear fair to all who observe them.' " Id. at 177, 128 S.Ct. 2379 (quoting Wheat v. United States , 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L. Ed. 2d 140 (1988) ). Allowing a person whose mental illness impairs the person's ability to conduct a defense without the assistance of counsel to nonetheless proceed without counsel risks creating the perception of unfairness, and undermining public confidence in the legal system. Id . As the Court had recognized in Massey , "No trial can be fair that leaves the defense to a man who is insane, unaided by counsel, and who by reason of his mental condition stands helpless and alone before the court." 348 U.S. at 108, 75 S.Ct. 145 ; see Edwards , 554 U.S. at 177, 128 S.Ct. 2379.
Although Indiana urged the Court to adopt a standard for assessing when a mentally ill person's request for self-representation may *205 be denied that was more specific *357 than the standard implicit in the Court's recognition that "the Constitution permits States to insist upon representation by counsel for those competent to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings themselves," Edwards , 554 U.S. at 178, 128 S.Ct. 2379, the Court declined to do so for pragmatic reasons. It was concerned about "endorsing * * * as a federal constitutional standard" a particular standard without knowing how the standard "would work in practice." Id . The Court remarked that trial judges are in the best position "to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so," thereby leaving the responsibility for refining and implementing appropriate standards to the individual states and, in the case of federal prosecutions, the lower federal courts. Id . at 177-78, 128 S.Ct. 2379.
B. Facts
In this case, defendant's convictions arose from two separate incidents. The first incident occurred on July 5, 2013. Defendant was intoxicated and behaving aggressively at a pizza parlor in Seaside. The pizza parlor called police to address the situation. Things did not go smoothly. The first responding officer found defendant yelling in the street and observed him shove a man. The officer called for cover officers and managed to get defendant to sit on a curb. When the additional officers arrived and informed defendant that he would be arrested, defendant resisted and fought the officers, causing them to scrape their knees when their knees hit the curb during the struggle with defendant. One of the officer's camera retaining clip also was broken as the officers wrestled with defendant. The officers eventually were able to handcuff defendant and place him in the back of a police car. Defendant kicked the doors of the car and yelled while on the way to jail. Once at the jail, defendant urinated on the cell doors and refused to clean up the mess when asked. This set of events led to defendant's conviction for two counts of assaulting a public safety officer, ORS 163.208 ; one count of resisting arrest, ORS 162.315 ; one count of disorderly conduct, ORS 166.025 ; and two counts of criminal mischief, ORS 164.345.
*358 The second incident occurred the following May, after defendant's brother-in-law contacted police for assistance in getting defendant to leave his elderly mother's house. Defendant's mother lived in a retirement community and had been given an eviction notice because defendant was staying at her house. Defendant's mother was afraid to tell defendant about the notice, and asked her son-in-law to help her with the situation.
Because of concerns about how defendant would respond and defendant's history of assaulting police officers, the police assembled a team of seven officers and one police dog to arrest defendant. As was the case the previous July, things did not go well. One of the officers approached the house from the front and, after defendant came out on the front porch, told defendant to put his hands over his head and turn away. Defendant threw his coffee cup and went back into the house. Defendant opened a rear door, saw that a group of officers was approaching, and closed the door. Defendant then opened the door again, walked outside, and began striking at one officer's ballistic shield. That officer retreated and the police dog was released. Defendant kicked the police dog in the face, stunning him. Defendant then punched an officer in the face, causing a scrape and "a bit of a black eye." That officer was able to take defendant to the ground, and other officers joined in to help secure defendant. Defendant was spitting at and attempting to bite the officers, so the police dog was redeployed to move defendant to a more open space and bite defendant's arm until officers could get a better hold of defendant. After the police dog was directed to release defendant's arm, defendant was able to get his arm away from the officer securing him and the police dog again bit defendant on his arm. Defendant was transported to jail after he was subdued. Defendant spat at the transporting officer before and while he was in the police car on the way to jail. After the officer closed the sliding window to the backseat, *206 defendant kicked the window. This set of events led to defendant's convictions for one count of coercion, ORS 163.275 ; one count of assaulting a public safety officer, ORS 163.208 ; two counts of aggravated harassment, ORS 166.070 ; one count of resisting arrest, ORS 162.315 ; one count of interfering with a police officer, ORS 162.247 ; *359 one count of menacing, ORS 163.190 ; one count of disorderly conduct, ORS 166.025 ; one count of escape in the third degree, ORS 162.145 ; and one count of third-degree criminal mischief, ORS 164.345.
Defendant suffers from serious mental health issues, including schizophrenia. Before trial, the trial court twice found that defendant was unable to aid and assist in his defense and sent him to the state hospital for treatment. Each time, defendant was treated and returned to court after a doctor determined that defendant's mental status was such that he was capable of aiding and assisting his defense. Neither doctor appears to have assessed whether or how defendant's mental disease would affect his ability to present a defense if defendant were not assisted by counsel. The doctor that evaluated defendant approximately one month before his criminal trial specifically contemplated that defendant would be working with an attorney to present his defense.
Between defendant's first and second hospitalizations, defendant requested that he be permitted to represent himself. Defense counsel informed the trial court that defendant had told him that he had stopped taking his medication and that defendant had indicated that the defense he wanted to pursue was to make the case "about official misconduct, that there is some level of jealously, animosity, between him and law enforcement because of his genetic relationship with Adolf Hitler." Defense counsel further explained that defendant was of the mind that that line of defense was viable, which caused counsel to think that defendant was "unable to aid and assist again." Counsel also told the court that, in his estimation, defendant had a viable diminished capacity defense, as well as a viable insanity defense. Defendant told the court that he did not dislike his lawyer, but that he wanted to focus the defense on how the police had led him to commit the charged crimes:
"I don't dislike [defense counsel]. I just don't agree with the tack that he's decided to take as far as the defense is concerned.
"Under both cases I was under extreme duress, which is a culpable mental state, but I think I was led to that eventual *360 incident, you know, that I was coerced by the police and that I was harassed continually, and the circumstances of both cases have significant correlations that equate to one thing, that I have been the victim of a conspiracy to put me back in prison, that I have suffered abuses that most people would not suffer."
The trial court declined defendant's request, indicating that it would take the issue up again when the case made it to trial, if needed.
Before trial, defendant again requested the trial court to permit him to represent himself. He explained, again, that he did not like the defenses that defense counsel intended to raise and that he was "working very hard at formulating defenses and abid[ing] by the rules of evidence." Counsel explained that he still thought that defendant was unable to aid and assist and stated that he was, "for the record, trying to explain that he really-he's walking into a conviction." The court granted defendant's request to represent himself, reasoning that, because the state hospital had determined that defendant was competent to make decisions in connection with his case and because defendant appeared able to conform his behavior to courtroom standards, defendant was entitled to represent himself. The court did not consider the extent to which defendant's mental illness would impair his ability to present a defense on his own, apparently believing that it was precluded from doing so.
Defendant's trial can be fairly characterized as a disaster for defendant. Defendant's opening statement and closing argument went off on a number of tangents, and his defense, to the extent one was discernible, was that he had been set up by the officers.[3]
*207 It is quite possible that that *361 defense was based on delusions about his relationship with the police. In all events, the defense's connection to reality was tenuous. Defendant did not conduct voir dire and did not cross-examine most witnesses. He raised few, if any, evidentiary objections, made no legal arguments, and did not challenge the sufficiency of the state's evidence with respect to any of the charges. The jury convicted him on all charges and the trial court sentenced him to a sum of 348 months' incarceration.[4]
As noted, defendant argues on appeal that the trial court legally erred when it failed to recognize that it had discretion, of the kind identified in Edwards , to deny his request to proceed without counsel, notwithstanding the fact that defendant was competent to stand trial. In defendant's view, that legal error was not harmless and requires reversal because of how defendant's trial ultimately unfolded. The state argues that defendant failed to preserve the issue of whether the trial court erroneously failed to recognize that it had discretion to deny his request to represent himself. The state also argues that the court's error, if any, is not plain error. In the context of that argument, the state asserts that under Article I, section 11, the trial court would not have had the sort of discretion to deny defendant's request to represent himself that Edwards contemplates.
II. ANALYSIS
This appeal raises three questions: (1) Did defendant preserve his claim of error? (2) If the claim of error is preserved, did the trial court err when it concluded that it did not have discretion to deny defendant's request to represent himself so long as defendant was competent to stand trial and make decisions for himself? And (3) if the trial court erroneously failed to recognize that it had discretion, what is the proper disposition? We address those questions in turn.
A. Preservation
The state argues, and defendant acknowledges, that the issue of whether the trial court could deny defendant's request to represent himself was not presented to the court *362 in the same clear and direct manner that it is presented to us. The question for us is whether the information that was presented to the court about defendant's mental state was sufficient to preserve the issue for appeal. We conclude that it was, for three reasons.
First, throughout the proceedings below, there were serious questions about whether defendant's mental illness made him incapable of proceeding to trial even with the assistance of counsel. Those questions fairly raised the issue of whether defendant would have the capacity to try the case on his own.
Second, defense counsel's statements to the trial court alerted the court that, if defendant were to try the case on his own, defendant likely would pursue a line of defense that may well have been predicated on delusional beliefs that were the product of his illness. Defendant's own statements to the court also indicated that, because of his mental illness, his line of defense might not be based on a rational understanding of his circumstances and, in particular, of his relationship to police.
Third, this issue of preservation arises in a unique context in a criminal proceeding. The determination whether a criminal defendant should be permitted to proceed without counsel does not fit neatly into the fabric of the adversarial process. The issues are ones that primarily concern the trial court and the defendant; after assessing a defendant's competency, the court is called upon to assess how a defendant's act of self-representation *208 will affect the orderliness and the fairness of the particular proceeding. A defense lawyer may often not be in a position to argue strongly against a client's wishes, and it is often an issue on which the state will have no meaningful basis to assert a position. In other words, this is an area in which it is fair to presume that trial courts are on notice of the standards that govern a request to proceed without counsel, such that the raising of a request to proceed without counsel ordinarily will preserve the contention of whether the court resolved the request under the correct legal standard or standards.
For all of those reasons, we conclude that the issue is preserved.
*363 B. Discretion to Decline a Mentally Ill Defendant's Request to Proceed Without Counsel
The next question is whether the trial court erred when it concluded that it lacked the discretion to deny defendant's request to represent himself because defendant otherwise was competent to stand trial. That is a question of law that we review for legal error. See Hightower , 361 Or. at 422, 393 P.3d 224 (reviewing trial court's decision to deny the defendant's request to proceed without counsel for legal error).
In view of Edwards , it is clear that the trial court erred to the extent its ruling reflects a conclusion that the Sixth Amendment required it to grant defendant's request to represent himself so long as defendant was otherwise competent to stand trial. The state argues, however, that the trial court did not err because, in its view, Article I, section 11, prohibited the court from denying defendant's request to represent himself once it determined that defendant was competent to make a knowing and voluntary waiver of the right to counsel. In support of that argument, the state relies on State v. Verna , 9 Or. App. 620, 498 P.2d 793 (1972), and State v. Miller , 254 Or. App. 514, 524, 295 P.3d 158 (2013). The state argues that Verna and Miller stand for the proposition that a trial court must grant a defendant's request to proceed without counsel "in the absence of evidence that the defendant either was incompetent to waive his right or would disrupt the proceedings."
Those cases, however, do not stand for as broad a proposition as the state asserts. That is primarily because, in those cases, we did not confront the specific question presented here: Can an otherwise competent defendant's request to proceed without counsel be denied if the defendant's mental illness renders the defendant incapable of trying the case without the assistance of counsel? To answer that question, we take our cues from Hightower .
As discussed above, in Hightower, the Supreme Court explained that the right of self-representation under Article I, section 11, is subject to the trial court's "overriding obligation to ensure the fairness and integrity of the trial." 361 Or. at 417-18, 393 P.3d 224. That is, Article I, section 11, allows a court *364 to deny a request to proceed without counsel when the circumstances are such that the act of self-representation will undercut the fairness and integrity of the trial in a way that calls the reliability of the trial process into question.
One such circumstance is the one presented here: when a person's mental illness renders the person incapable of conducting the basic tasks of presenting a defense. For the reasons clearly explained in Edwards and recounted above, permitting a person whose mental illness renders the person incapable of conducting the functions of the defense without the assistance of counsel undermines the fairness of the proceeding in a way that calls into question the reliability of our legal system. To reiterate what the Court stated in Massey , "No trial can be fair that leaves the defense to a man who is insane, unaided by counsel, and who by reason of his mental condition stands helpless and alone before the court." 348 U.S. at 108, 75 S.Ct. 145. Thus, we conclude, that Article I, section 11, like the Sixth Amendment, allows the denial of a criminal defendant's request to proceed without counsel where the defendant is in the class of defendants identified in Edwards : "those competent enough to stand trial [with the assistance of counsel] * * * but who still suffer from severe mental illness to the point where they are not competent to conduct *209 trial proceedings by themselves." 554 U.S. at 178, 128 S.Ct. 2379.
Having so concluded, we must address what standard should govern an Oregon trial court's assessment of whether a criminal defendant's mental illness renders the defendant incompetent to conduct a trial without the assistance of counsel so as to permit the court to deny a mentally ill defendant's request for self-representation. On this point, we have no guidance from the United States Supreme Court, our own Supreme Court, or our legislature. That makes it our responsibility to set a standard until such time that one or more of those entities supply one. Although, in the time since Edwards was decided, scholars have proposed, and states have adopted, different approaches,[5] we are persuaded by the approach taken by our neighbor, California.
*365 In People v. Johnson , the California Supreme Court considered whether "California courts should have discretion to deny self-representation to gray-area defendants" under Edwards . 53 Cal 4th 519, 528, 267 P.3d 1125, 1131, 136 Cal.Rptr.3d 54 (2012). Concluding that such discretion was consistent with California law, it determined that the standard to deny self-representation should be the same one articulated by the Supreme Court in Edwards to ensure compatibility with the Sixth Amendment right to self-representation, that is, to ensure that a court does not exercise the discretion to deny self-representation in a situation in which the Edwards standard would entitle the defendant to self-representation. Id . at 530, 136 Cal.Rptr.3d 54, 267 P.3d at 1132. Providing further guidance to its own lower courts, the court explained:
"But, pending further guidance from the high court, we believe the standard that trial courts considering exercising their discretion to deny self-representation should apply is simply whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel.
"A trial court need not routinely inquire into the mental competence of a defendant seeking self-representation. It needs to do so only if it is considering denying self-representation due to doubts about the defendant's mental competence. When a court doubts a defendant's competence to stand trial, it shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant. Similarly, when it doubts the defendant's mental competence for self-representation, it may order a psychological or psychiatric examination to inquire into that question. To minimize the risk of improperly denying self-representation to a competent defendant, trial courts should be cautious about making an incompetence finding without the benefit of an expert evaluation, though the judge's own observations of the defendant's in-court behavior will also provide key support for an incompetence finding and should be expressly placed on the record.
*366 "Trial courts must apply this standard cautiously. * * * Criminal defendants still generally have a Sixth Amendment right to represent themselves. Self-representation by defendants who wish it and validly waive counsel remains the norm and may not be denied lightly. A court may not deny self-representation merely because it believes the matter could be tried more efficiently, or even more fairly, with attorneys on both sides. Rather, it may deny self-representation only in those situations in which Edwards permits it."
Id . at 530-31, 136 Cal.Rptr.3d 54, 267 P.3d at 1132-33 (emphasis in original; internal citations and quotations omitted).
In the absence of further guidance from the United States Supreme Court, our own Supreme Court, or the legislature, we agree with this approach and adopt it as our own. We recognize that the decision called for by a trial court may often be a challenging one for the court. That is because it will require the court to balance the significant autonomy interests protected by the state and federal *210 constitutional rights to self-representation, against the fundamental need to ensure that our state's criminal proceedings are reliable and fair ones in which the public can have confidence. Because of the complicated and significant nature of the decision, we emphasize, in particular, the importance of obtaining psychological or psychiatric assessment of how a defendant's mental illness may affect the defendant's ability to conduct a trial without the assistance of counsel, and the importance of making express findings of fact on the record when determining how a criminal defendant's mental illness affects the defendant's capacity to conduct a trial without the assistance of counsel.
C. Disposition
Our conclusion that a trial court has the discretion to deny a mentally ill defendant's request for self-representation when the mental illness impairs the defendant's ability to stand trial without the assistance of counsel means that the trial court erred when it concluded that it was required to grant defendant's request to represent himself because defendant was competent to stand trial, even in the face of evidence that defendant's severe mental illness *367 compromised his ability to present a defense. The final question is whether the error is reversible, that is, whether there is some likelihood that it affected the jury's verdict. See State v. Cunningham , 164 Or. App. 680, 689-90, 995 P.2d 561, rev. den. , 331 Or. 283, 18 P.3d 1100 (2000) (determining whether trial court's failure to hold competency hearing had little likelihood of affecting jury's verdict).
Here, we are persuaded from our review of the record that the trial court's error had some likelihood of affecting the jury's verdict. The information in the record about defendant's long history of mental illness demonstrates that there is some likelihood that this is a case in which the trial court, had it recognized the discretion that it had to deny self-representation under the standard set forth in Edwards , would have done so, and the record of the trial-and defendant's performance at trial-indicates strongly that the absence of counsel had a likelihood of affecting the jury's verdict. We therefore reverse. Although we would have the discretion in this circumstance to order a more limited remand for the court to conduct a retroactive assessment of defendant's competency to stand trial without the assistance of counsel, and to consider whether it would have permitted defendant to proceed without counsel in view of that assessment, see State v. Gilmore , 102 Or. App. 102, 105, 792 P.2d 1242 (1990) (vacating and remanding for trial court to conduct a retroactive competency hearing when court had erroneously failed to conduct competency hearing before trial); see also United States v. Ferguson , 560 F.3d 1060, 1069-70 (9th Cir.), cert. den. , 558 U.S. 910, 130 S.Ct. 286, 175 L.Ed.2d 191 (2009) (vacating and remanding for district court to assess, retroactively, whether to exercise discretion under Edwards to deny mentally ill defendant's request to represent himself), we decline to exercise that discretion in this case because of the likelihood that defendant's mental illness, in tandem with the absence of counsel, prejudicially impaired defendant's criminal trial, the fact that this appears to be the first time Oregon has been called upon to conduct the assessment permitted under Edwards , and the well-recognized "inherent difficulties" of conducting such exam retroactively, in view of the passage of time and the absence of a contemporaneous assessment of the effect of defendant's mental illness *368 on his ability to conduct trial proceedings without the help of a lawyer. Cf. Drope v. Missouri , 420 U.S. 162, 183, 95 S.Ct. 896, 43 L. Ed. 2d 103 (1975) (declining to remand for a retroactive competency hearing where state trial court failed to inquire adequately into criminal defendant's competency to stand trial because of "the inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances"); see also Pate v. Robinson , 383 U.S. 375, 387, 86 S.Ct. 836, 15 L. Ed. 2d 815 (1966) ("[W]e have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial.").
Reversed and remanded.

On appeal, defendant does not assign error to the trial court's determination that he was competent to stand trial. Defendant also does not assign error to the court's determination that defendant was competent to knowingly and voluntarily waive the right to counsel.

Under Dusky , a criminal defendant is competent to stand trial if the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." 362 U.S. 402, 80 S.Ct. 788 (quotation marks omitted). In Godinez v. Moran , 509 U.S. 389, 400-01, 113 S.Ct. 2680, 125 L. Ed. 2d 321 (1993), the Court held that the competency standard is the same for waiving the right to counsel.

As an example, in closing argument, defendant argued that the fact that the officers had brought a dog to his mother's house demonstrated that he had been set up because, in his numerous prior encounters with police, no dogs had been involved:
"Obviously, the pictures that were taken at my mother's house were a ruse. This is a horse or dog and pony show, and they brought the dog. First time I've ever encountered a dog in my entire career, and I'm-I've been at it awhile. I'm 53 years old. I started when I was 13. I've had at least 200 contacts with the police. This is the first time ever I have had contact with a dog. They brought a dog to my mother's house to psychologically coerce me into violent behavior."

By the time of sentencing, defendant had requested, and received, the assistance of a lawyer.

See Todd A. Berger, The Aftermath of Indiana v. Edwards: Re-evaluating the Standard of Competency Needed for Pro Se Representation , 68 Baylor L. Rev. 680 (2016) (examining different proposed and adopted approaches following the decision in Edwards ).