18                    February 22, 2024                    No. 108

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RHONDA LEE NIGHTINGALE,
*Defendant-Appellant.*

Coos County Circuit Court
21CR41245; A177435

Andrew E. Combs, Judge.

Submitted April 24, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Neil F. Byl, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals her judgment of conviction, following a bench trial, for second-degree assault, ORS 163.175, unlawful use of a weapon, ORS 166.220, and recklessly endangering another person, ORS 163.195. She asserts two assignments of error. First, she argues that the trial court erred in permitting her to proceed without counsel. Second, she contends that the trial court erred in entering a verdict convicting her of second-degree assault without determining whether she was criminally negligent with respect to the physical-injury element of the offense. We conclude that defendant validly waived her right to counsel and that nothing in the record indicates that she lacked capacity to represent herself, so the trial court did not err in permitting her to proceed without counsel. We further conclude that any error as to the court's application of the mental-state standard for the second-degree assault charge was harmless. Accordingly, we affirm the trial court's judgment.

The charges here were based on allegations that defendant hit W in the back of the head with a wooden stick that appeared to be a table leg; as to second-degree assault, the state alleged that by taking those actions, defendant "unlawfully and knowingly cause[d] physical injury to [W] by means of a dangerous weapon."[1]

At multiple pretrial hearings—including arraignment, a hearing on defense counsel's motion to withdraw, a change of plea hearing, and a trial readiness hearing— defendant asserted her right to waive counsel. After consulting with defendant and her counsel, and advising defendant of the risks of self-representation, the trial court accepted her waiver of counsel and allowed her to represent herself. At the beginning of defendant's trial, the court stated, "[Y]ou have waived your right to counsel" and "I want to give you a second chance to consider whether or not getting counsel makes sense for you or not." The court continued:

"[Y]ou understand that with respect to Count 1 here, on the [second-degree] [a]ssault ***, if you were to be found

---

[1] "A person commits the crime of assault in the second degree if the person *** [i]ntentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon," among other conduct. ORS 163.175(1)(b).

responsible, that there is a minimum penalty here of 70 months in prison. Which is a significant time in prison. As \* \* \* you are aware.

"And so, \* \* \* I wanted to go through some things here with you before we go too much further \* \* \* just to make sure that you understand that you do have the constitutional right to have a lawyer appointed for you, free of charge, by the State. Who could sit there and ask questions and be able to understand how the process of the [c]ourt works.

"And so, do you understand that, ma'am?"

Defendant replied, "I understand all that, sir. I've been to court a lot of times. And I've been to prison five times. The first time I went to prison was in 1985. I'm well aware of the law." Defendant continued to represent herself and also waived her right to a jury trial. She refused to make opening and closing arguments, but she cross-examined the state's witnesses, including W and the police officer who investigated the incident.

The court ultimately convicted defendant of all counts. The court concluded that the state's evidence was sufficient to establish the assault elements of physical injury and dangerous weapon, but did not expressly address defendant's mental state in rendering its decision regarding assault. It did address defendant's mental state when assessing the charge of recklessly endangering another person, which arose from the same conduct at issue. As to that charge, the court concluded that defendant "recklessly create[d] a substantial risk of serious physical injury \* \* \* hit[ting] [W] in the back of the head with [the wooden stick] for all intents and purposes."

We begin by addressing defendant's first assignment of error, contending that the record is insufficient to establish that she substantially appreciated the risks of proceeding to trial without a lawyer and was capable of conducting a trial without assistance of counsel. She argues that the record suggests that she suffered from a mental illness and that the court should have conducted an inquiry into her capacity to act as her own lawyer before allowing her to do so. Defendant's argument addresses the adequacy

of her waiver of counsel after the court granted counsel's motion to withdraw, but is largely focused on her contention that the court erred in allowing her to represent herself despite signs that mental illness prevented her from being capable of doing so. We address the state of the record as to both issues and conclude that the court did not err.

We review for legal error a trial court's decision allowing a criminal defendant to waive counsel and proceed *pro se* where the decision, as here, "turns on the court's legal conclusions as to the scope of the right[s]." *State v. Hightower*, 361 Or 412, 421, 393 P3d 224 (2017); *see also State v. Meyrick*, 313 Or 125, 134, 831 P2d 666 (1992) (indicating that in assessing a defendant's waiver of the right to counsel, we should assess whether "the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right").

"Whether there has been an intentional relinquishment or abandonment of a known right or privilege will depend on the particular circumstances of each case," including the defendant's "experience" and "mental capacity." *Id.* at 132. In making that assessment, a "trial court should focus on what *the defendant* knows and understands." *Id.* (emphasis in original); *see also State v. Reynolds*, 224 Or App 411, 418, 198 P3d 432 (2008), *rev den*, 346 Or 158 (2009) ("To satisfy the 'known right' legal component of the standard discussed in *Meyrick*, the trial court must determine not only that the defendant is aware of the right to counsel but also that the defendant understands the risks inherent in self-representation."). A trial court may determine whether the defendant is aware of their right to counsel and understands the risks associated with waiving that right by making a colloquy in which the judge explains the risks of self-representation to the defendant. *Meyrick*, 313 Or at 133 ("The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right * * * and that the record will so demonstrate.").

Here, assessing "the record as a whole" under *Meyrick*, we conclude that defendant's waiver was "an intentional relinquishment" of a "known right." *Id.* at 134. First, defendant stated multiple times that she wanted to represent herself. In addressing defendant's requests, the court engaged with defendant, at separate dates during the proceedings, about the advantages of representation by counsel and the risks of self-representation. Defendant's replies during the court's colloquies and her overall demeanor during the proceedings evince no indication that defendant lacked mental capacity to the point of impairing her competence to waive her right to counsel. Further, in addition to replying affirmatively every time the court asked if she wanted to represent herself, defendant confirmed that, in making that decision, she was not "under the influence of any illegal drugs, medications or alcohol." The record does not support that she lacked capacity or that she was not aware of her right to counsel and of the risks inherent in self-representation when she waived that right. The trial court, thus, did not err in accepting defendant's waiver of counsel.

Second, regarding defendant's argument that she lacked capacity to represent herself, defendant specifically contends that she made direct statements during the trial that she was mentally ill and that those statements should have prompted the court to prevent her from proceeding to trial. Oregon courts "considering a mentally ill defendant's request to proceed without counsel may take into account whether, as a result of severe mental illness, the defendant lacks the ability 'to carry out the basic tasks needed to present [one's] own defense without the help of counsel,' and may deny the request if the answer to that question is yes." *State v. Hayne*, 293 Or App 351, 354, 427 P3d 201 (2018), *rev den*, 364 Or 294 (2019) (quoting *Indiana v. Edwards*, 554 US 164, 175-76, 178, 128 S Ct 2379, 171 L Ed 2d 345 (2008)). We will review that determination for abuse of discretion. *Hayne*, 293 Or at 366 (holding that a trial court has the discretion to deny a mentally ill defendant's request for self-representation when the mental illness impairs the defendant's ability to stand trial without the assistance of counsel). Defendant, however, offers no authority, and we are

aware of none, that indicates that the court was required to inquire beyond her statement—which occurred while trial was already underway—before allowing her to continue to proceed without counsel.

Here, defendant points to only one statement—"I'm a mental patient"—which she asserted during the trial, in the context of explaining that it was "very difficult" for her to represent herself and requesting to "end for the day." Thus, the only reference to mental illness occurred after the trial court's decision to grant defendant's request to represent herself. It is possible that defendant suffered from a mental illness, but the record contains no indication of confusion or communication problems that impaired her capacity for self-representation. *Id*. (indicating that mental illness is a ground to deny a defendant's request for self-representation where "the mental illness impairs the defendant's ability to stand trial without the assistance of counsel"). In fact, defendant was able to (a) articulate the reasons she wanted to fire her counsel; (b) express her preferences concerning the state's plea offer and a trial to the court rather than to a jury; (c) articulate challenges to the accuracy of the evidence; and (d) cross-examine witnesses. The record does not establish that the trial court erred in allowing defendant to proceed without counsel. *Id*. at 365 (a trial court need "not routinely inquire into the mental competence of a defendant seeking self-representation" unless "it is considering denying self-representation due to doubts about the defendant's mental competence").

We turn to defendant's second assignment of error, regarding the trial court's ruling as to second-degree assault. She argues that the court plainly erred by failing determine that she acted with at least criminal negligence with respect to the physical injury element of that offense. Defendant concedes that her claim is unpreserved and asks us to review for plain error under ORAP 5.45(1) (authorizing us to exercise discretion to consider unpreserved errors that are plain).

We need not resolve the question of whether the court committed a plain error because, in any event, any error was harmless beyond a reasonable doubt on the facts

of this record. *See State v. Horton*, 327 Or App 256, 262, 535 P3d 338 (2023) ("We cannot reverse a judgment based on a harmless error, so if the error was truly 'harmless,' then we have no discretion and must affirm" as to that challenge); *see also State v. Perkins*, 325 Or App 624, 529 P3d 999 (2023) (establishing the beyond-a-reasonable-doubt standard).

An "error is harmless if there is little likelihood that the error affected the verdict or substantially affected the defendant's rights." *State v. Garcia*, 284 Or App 357, 363, 392 P3d 815, *rev den*, 361 Or 645 (2017). Generally, to determine whether an instructional error was harmless in the context of the culpable mental state, we review the question of "whether there is some likelihood that the jury might *not* have been persuaded that he had the requisite mental state, had it considered that issue." *State v. Stone*, 324 Or App 688, 695, 527 P3d 800 (2023) (emphasis in original). Likewise, "in a bench trial, we *** review whether the trial court's legal error regarding an element of the offense that the state had to prove may have affected the outcome of the case." *State v. McKinney/Shiffer*, 369 Or 325, 335, 505 P3d 946 (2022). In doing that, "we consider the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *State v. Owen*, 369 Or 288, 323-24, 505 P3d 953 (2022) (internal quotation marks omitted).

Here, the state's theory was that defendant "unlawfully and knowingly cause[d] physical injury to [W] by means of a dangerous weapon." *See* ORS 163.175(1)(b) (stating that such conduct constitutes second-degree assault); *see also* ORS 161.015(1) (defining "dangerous weapon"). The trial court convicted defendant based on crediting the state's evidence that defendant hit W in the back of the head with a wooden stick. The court first found that evidence that defendant's conduct caused W a contusion that was at minimum a "half inch" and "the size of a small egg," and that it caused W pain and "trouble waking up" at least until "the next morning," was enough to establish the physical injury element. Second, the court found that the wooden stick that defendant used, which was about "three feet long," had about a

"three-inch" diameter, and "look[ed] like a table leg," constituted a dangerous weapon as it "could potentially cause serious physical injury." Moreover, when assessing defendant's charge of recklessly endangering another person, which arose from the same conduct at issue, the court concluded that defendant "recklessly create[d] a substantial risk of serious physical injury *** hit[ting] [W] in the back of the head with [the wooden stick] for all intents and purposes." Given those findings, there is little likelihood that the court would not have found that defendant's conduct was at least criminally negligent with respect to the fact that it would cause physical injury.[2]

> "'Criminal negligence' *** means that a person fails to be aware of a substantial and unjustifiable risk that [a] circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

ORS 161.085(10); *see also State v. Shedrick*, 370 Or 255, 270-71, 518 P3d 559 (2022) (a criminal negligence culpable mental state may also be proved by knowledge or recklessness). Based on the court's findings described above—including that defendant acted recklessly with respect to the risk of physical injury when hitting W in the back of W's head with a dangerous weapon—there is little likelihood that the court would not have been persuaded that defendant failed to be aware that her conduct created a risk of physical injury to W. Likewise, there is little likelihood that the court would not have found that defendant's failure to be aware of the risk created by her conduct constituted the type of deviation described in ORS 161.085(10). Accordingly, we reject defendant's second assignment of error.

> Affirmed.

---

[2] We observe that the court did not expressly address whether defendant acted "knowingly." Defendant, however, does not raise that issue on appeal, and so we need not address it.